UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORTUNE PLAYERS GROUP, INC., <br>     Plaintiff, <br> v. <br> WAYNE QUINT, JR., <br>     Defendant. | Case No. 16-cv-04557-TEH <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter came before the Court on November 14, 2016 for a hearing on Defendants' motion to dismiss Plaintiff Fortune Players Group's complaint (ECF No. 14). After carefully considering the parties' written and oral arguments, the Court hereby GRANTS Defendants' motion to dismiss for the reasons set forth below.

**BACKGROUND**

Plaintiff Fortune Players Group, Inc. ("Fortune Players Group") is a California corporation and a third-party provider of propositional player services ("Third Party Provider.") Compl. ¶ 3.[1] Defendant Wayne Quint, Jr. is the Chief of the Bureau of Gambling Control (the "Bureau") for the State of California and is responsible for all licensing and enforcement functions under the Gambling Control Act. *Id.* ¶ 4. The individual defendants sued as Does One through Fifty are employees of the Bureau. *Id.* ¶¶ 5-6.

Fortune Players Group registered as a Third Party Provider in early 2010. *Id.* ¶ 7. Soon thereafter, it applied for a license pursuant to existing state operations. *Id.* For six years, the Bureau failed to process Plaintiff's application for a license allegedly due to staff shortages. *Id.* ¶ 8. During those years, Fortune Players Group operated as a registrant,

---

[1] Unless otherwise indicated, all facts in this section are found in the complaint and are accepted as true for the purposes of this motion.

1  contracting with the Lucky Chances Casino to provide propositional players at its card
2  room in Colma, California. *Id.* ¶ 7.

3        On February 17, 2016 Plaintiff filed a complaint against Wayne Quint, Jr., special
4  agents and other employees of the Bureau challenging the constitutionality of a warrantless
5  search that occurred at Plaintiff's office on October 15, 2015. *Fortune Players Group, Inc.*
6  *v. Wayne Quint, Jr. et al.*, Case No. 16-cv-0800 TEH (*Fortune Players I*). On July 5, 2016,
7  defendants in *Fortune Players I* stated in a joint case management conference statement
8  that "the claims for equitable relief [in *Fortune Players I*] may become moot if either
9  Fortune Players Group or its contract partner loses its license." *Id.* ¶ 10. That same day,
10 Fortune Players Group received a letter from the Bureau requesting additional information
11 about one of its employees, Calvin Wu. Ex. D to Compl. ¶ 12. The letter was followed by
12 thirty seven letters requesting background information about other employees of Fortune
13 Players Group. *Id.* ¶ 12. Plaintiff alleges that the timing and number of the requests was
14 inconsistent with the practice of the Bureau over the last six years. *Id.* Also inconsistent,
15 Plaintiff claims, was the assignment of special agents from the Enforcement Division of
16 the Bureau to participate in licensing activities. *Id.*

17       Plaintiff concludes that the Bureau, under the direction of Defendant Wayne Quint,
18 Jr., "commenced a course of action designed to fast track the licensing process of Fortune
19 Players Group" with the goal of making the claims in *Fortune Players I* moot. *Id.* ¶ 11.
20 These actions, Plaintiff claims, were taken against Plaintiff in retaliation for the fact that
21 Plaintiff exercised its First Amendment right to petition for grievances by filing *Fortune*
22 *Players I*. *Id.* ¶ 13.

23       Based on these allegations, Plaintiff seeks a preliminary injunction to maintain the
24 status quo between the parties in *Fortune Players I* by prohibiting Defendant from fast
25 tracking Plaintiff's licensing request. *Id.* ¶ 15. Defendants move to dismiss the entire
26 complaint.

27
28

United States District Court
Northern District of California

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure ("Rule") 12(b)(1) when a federal court lacks subject matter jurisdiction. Federal courts' subject matter jurisdiction is limited by Article III's "case or controversy" clause, which requires in part that a plaintiff have standing and that the plaintiff's claims be "ripe" for adjudication. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing … pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1)."). The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In reviewing a Rule 12(b)(1) motion to dismiss, courts must take the allegations in the complaint as true and draw "all reasonable inferences in [plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Dismissal is also appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Specifically, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 547, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion under Rule 12(b)(6), a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). Dismissal of claims that fail to meet this standard should be with leave to amend, unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint for three reasons: (1) the complaint does not present a justiciable case or controversy; (2) the complaint fails to state a claim on which relief may be granted; and (3) *Younger v. Harris* requires the Court to abstain and dismiss this action. This Court finds that dismissal is appropriate for failure to present a justiciable controversy and for failure to state a claim. As a result, the Court does not reach the issue of whether *Younger* abstention applies.

### I.  Plaintiff Does Not Present a Justiciable Case.

Defendants argue that the complaint does not present a justiciable controversy because Plaintiff lacks standing and the claim raised is not ripe for review. Plaintiff asserts in response that the ripeness and standing requirements are less stringently applied to claims under the First Amendment.

First Amendment claims are not exempt from basic justiciability requirements. *See Laird v. Tatum*, 408 U.S. 1, 13 (1971); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999). For a federal court to hear the present case, Plaintiff must show that the claim is ripe for adjudication and that Plaintiff has standing. *See Allen*, 468 U.S. at 750. Whether framed as an issue of standing or ripeness, the inquiry here is largely the same: "whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas*, 220 F.3d at 1139 (9th Cir. 2000) (en banc); *see Wolfson v. Brammer*, 616 F.3d 1045, 1058-59 (9th Cir. 2010) (explaining that the constitutional component of ripeness overlaps with the "injury in fact" analysis of Article III standing). Further, to establish standing, Plaintiff must show that: (1) it suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or hypothetical;'" (2) there is a causal relationship between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

1  This Court finds that Plaintiff has failed to plead facts showing an actual injury. The
2  relevant allegations in the complaint are as follows: the Bureau did not process Plaintiff's
3  license application for six years (Compl. ¶ 7); once Plaintiff filed *Fortune Players I*, the
4  Bureau "commenced a course of action designed to fast track the licensing process of
5  Fortune Players Group" in order to deny Plaintiff a license and make its claim in *Fortune
6  Players I* moot. *Id.* ¶ 11. Accepting these allegations as true, the Court is unable to identify
7  a present injury. In order for the claim in *Fortune Players I* to become moot, Plaintiff
8  needs to have been denied a license, that denial needs to have become final, and Plaintiff
9  needs to have ceased its business operations. *See* Cal. Bus. & Prof. Code § 19826, 19868,
10 19870, 19984.[2] Currently neither the Bureau nor the Commission have taken any steps to
11 deny Plaintiff's license. Even if the Bureau's decision to finally review Plaintiff's license
12 application after a six-year delay was influenced by Plaintiff's suit against the Bureau, the
13 processing of the application itself does not constitute an actual injury. To the contrary, the
14 Bureau is under a statutory mandate to review the application Plaintiff filed in August 26,
15 2010.[3] *See* § 19826(a).

16 In addition to failing to allege facts showing an actual injury, Plaintiff has failed to
17 allege facts suggesting a danger of an imminent injury. The harm that Plaintiff fears—
18 *Fortune Players I* becoming moot—may never transpire. Even if the Bureau recommends
19 that Plaintiff's application is denied, the Commission may reject that recommendation. *See*
20 § 19870 (stating that the Commission makes the final decision on whether to issue a Third

---

[2] Unless otherwise provided, all statutory references are to the California Business and Professions Code.

[3] Defendants filed a request for judicial notice of the terms and existence of the following records: (1) records filed in *Fortune Players I*; (2) a summons issued by the Bureau to Fortune Players on August 26, 2010; (3) an application form for third party propositional player license for supervisors, players and other employees; (4) a form for supplemental information required by the Bureau. Defs.' Request for Judicial Notice at 1-2 (ECF No. 15). Plaintiff does not oppose the Court's taking of judicial notice but disputes Defendants' interpretation of the records. Pl.'s Resp. at 2 (ECF No. 22). Finding that the terms and existence of the records are not subject to reasonable dispute, the Court takes judicial notice of all four records. *See* Fed. R. Evid. 201(a), (b). Judicially noticed facts may be considered when evaluating the sufficiency of a complaint's allegations. *See Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001); *Cervantes*, 5 F.3d at 1274 (internal quotation marks omitted).

Party Provider a license, not the Bureau). Before the Commission can deny a license application, it needs to either: (1) hold an evidentiary hearing that gives the applicant an opportunity to present evidence and examine witnesses, pursuant to § 19871 and California Code of Regulations Title 4, § 12060; (2) refer the matter to a hearing before Administrative Law Judge, pursuant to California Government Code § 11517(c)(1); or (3) have the Executive Director of the Commission refer the matter to an evidentiary hearing, pursuant to California Code of Regulations § 12060. Plaintiff would not be denied a license without an opportunity to challenge the Bureau's recommendation and state its retaliation claim. *See* §§ 19825, 19826(a), (b), (c), (e). Further, if the Commission recommends denial, Plaintiff would be given an opportunity to seek reconsideration of the Commission's decision. *See* Cal. Code Regs. tit.4, § 12066(a). Once the Commission's denial decision becomes final, Plaintiff could seek judicial review through a writ of mandamus in state court, as outlined in Section 19870(e).

This brief review of the controlling regulatory scheme demonstrates that the danger of Plaintiff's license application being denied is anything but imminent. It will take months before the license review process is completed. *See* Cal. Code Regs. tit.4, § 12066(a) (applicant is provided notice sixty days before an evidentiary hearing is held); *id*. § 12066(a),(b) (Commission has up to seventy five days to rule after the hearing); *id*. § 12064(a) (applicant has thirty days to request reconsideration and then it takes up to sixty days for the matter to be placed on the Commission's agenda); Cal. Gov. Code § 11519(a) (it takes thirty days for the decision to become effective). Until the Commission has made a final decision denying Plaintiff's license or granting it with restrictions, any allegations of injury are purely speculative.

In addition to the lack of an ascertainable injury, Plaintiff fails to satisfy the second requirement of standing: that the injury be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41-42 (1976)). If Plaintiff is indeed denied a license, the injury will be

6

the result of the independent action of a third party—the Commission—not the result of the direct actions of the Defendant. *See* §§ 19826(a)(e), 19870.

Plaintiff responds to Defendants' justiciability challenge by arguing that the ripeness and standing requirements are tempered in the context of First Amendment claims. Opp'n at 4. Plaintiff first cites to authority for the proposition that a person is not required to violate a statute that may chill First Amendment rights before challenging the constitutionality of that statute. *See Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (holding that plaintiff's pre-enforcement challenge to the constitutionality of provisions of the California's Political Reform Act was ripe); *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1005-07 (holding that a constitutional challenge to law regulating political speech in the final days before an election was ripe). While that may be true in the context of pre-enforcement challenges to statutes restricting protected activities, the circumstances here are entirely distinguishable. Plaintiff is not challenging the constitutionality of the statutory scheme under the Gambling Control Act. Plaintiff will not suffer an "impending" injury because there is nothing inherent in the license review process that Plaintiff is undergoing that limits constitutionally protected activity. *See* Opp'n at 5 (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923) for the proposition that "one does not have to await the consummation of a threatened injury to obtain preventive relief. If the injury is impending, that is enough.").

Plaintiff's reliance on *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989) in the context of standing is misguided. In that case, a corporation Soranno's Gasco and two of its shareholders sued a local district for violation of due process and First Amendment retaliation. *Id*. at 1312. They alleged that they were retaliated against for publicly criticizing the district, for instituting local hearings and for initiating litigation against the county. *Id*. The Ninth Circuit reversed the district court's grant of summary judgment in favor of the district because it found that there was a material issue of fact as to whether the district had acted with a retaliatory motive when it suspended Gasco's permit. *Id*. at 1315-16. The court also found that the company and the individual

7

shareholders had standing to sue because they had suffered direct and independent injuries. *Id*. at 1318-19. The company had its license suspended for two weeks and its customers notified that they could lose their licenses if they continued to do business with the company. *Id*. at 1319. The individual plaintiffs had suffered mental and emotional distress as a result of defendants' actions. *Id*. Here, by contrast, Plaintiff has suffered no actual injury. Fortune Players Group has not had its registration revoked or its license application denied. Nor has its business been impacted by the alleged speeding up of its license application process.

Even drawing all reasonable inferences in Plaintiff's favor, the Court cannot find that Plaintiff's claim is ripe for review or that Plaintiff has met its burden to establish standing. Plaintiff has pleaded no facts suggesting a current or imminent injury should the Bureau be allowed to continue its review of Plaintiff's license request. On that basis alone, this Court finds that dismissal is appropriate under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.     The Complaint Fails to State a Claim Upon Which Relief Can be Granted.

Plaintiff asks the Court to read its complaint as stating a claim for First Amendment retaliation: "the question is whether plaintiff's complaint alleges sufficient facts to state a claim for retaliation under the First Amendment seeking a preliminary injunction to maintain the six-year-long status quo pending resolution of [*Fortune Players I*]." Opp'n at 4. Even though the Court need not reach this issue given that dismissal is warranted for lack of standing, the Court grants Plaintiff's request and analyzes the sufficiency of the alleged facts.

To state a First Amendment retaliation claim, plaintiff must plead facts supporting each of the following elements:

> a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity

8

was a substantial or motivating factor in the defendant's conduct.

*Pinard v. Clatskanie Sch. Dist. 6J,* 467 F.3d 755, 770 (9th Cir.2006) (citing *Mendocino Envt'l Cntr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999)).

The complaint alleges sufficient facts to plead some but not all elements of the claim. Plaintiff pleaded facts showing that Fortune Players Group engaged in conduct protected by the First Amendment when it filed suit to challenge the legality of a warrantless search of its premises. *See Soranno's Gasco*, 874 F.2d at 1314 ("the right of access to the courts is subsumed under the First Amendment right to petition for redress of grievances"). Read liberally, the complaint also provides facts suggesting that litigation in *Fortune Players I* might have motivated Defendants to resume or speed up the processing of Plaintiff's application. Compl. ¶¶10-12.

Nonetheless, Plaintiff fails to allege any facts showing that Defendants' committed acts that would chill a person of ordinary firmness from engaging in protected conduct. The three adverse actions that Plaintiff points to in the complaint are: (1) the Defendants included a statement about a potential mootness issue in their case management statement in *Fortune Players I*; (2) that Defendants sent thirty eight letters requesting information; and (3) that Defendants assigned agents from the Bureau's enforcement division to assist in the processing of information. The thirty eight letters sought routine background information about each of Plaintiff's thirty eight employees. Ex. D to Compl. ¶ 12; Ex. 7 to Defs.' Request for Judicial Notice; *see* §§ 19826, 19827, 19868, 19984. Similarly, the assignment of agents from one division within the Bureau to assist another, though perhaps uncommon, is not an adverse action that could create an unconstitutional chill. Even if the Court accepts as true Plaintiff's allegation that the case management statement was an implied threat, such a threat would constitute an adverse action only if it could chill a corporate plaintiff of ordinary firmness from exercising it rights. Plaintiff has not alleged that Defendants' actions actually deterred it from litigating its claims in *Fortune Players I*. Nor has Plaintiff alleged that Defendants' actions were such that an ordinary corporate entity would be deterred from pursuing its right to petition for redress of grievances.

9

Plaintiff's reliance on *Gibson* and *Soranno's Gasco* in defense of its retaliation claim is misplaced. In *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1994), the Ninth Circuit held that plaintiffs had stated a claim for retaliation because they had alleged discreet acts of police surveillance and intimidation directed at silencing plaintiffs. In *Soranno's Gasco*, plaintiffs had alleged specific actions that defendants took to chill plaintiffs' protected conduct: the suspension of the corporate plaintiff's permit and the notice given to customers about that suspension. *Soranno's Gasco*, 874 F.2d at 1314-16. By contrast here, Plaintiff has not alleged any actions taken by Defendants that were adverse to the Plaintiff's interests and that could have a chilling effect on its protected activities. The Court cannot find that a corporation would cease pursuing its claim for injunctive and declaratory relief against the Bureau because the Bureau, which is tasked with reviewing its license application, has finally after a six-year delay started to process that application.

The Court holds that Plaintiff has failed to sufficiently plead a First Amendment retaliation claim. Further, the Court agrees with Defendants that a claim for a preliminary injunction is not a cognizable claim. Any preliminary relief sought in *Fortune Players I* should have been raised in that case, not sought through a separate action.

### III. Granting Leave To Amend Would Be Futile.

At oral argument, Plaintiff requested leave to amend the complaint so as to allege that the Bureau could cancel Plaintiff's registration pursuant to California Code of Regulations § 12205. Plaintiff argues that the Bureau could make the claim in *Fortune Players I* moot much faster if it cancelled Plaintiff's registration, rather than recommending that its license be denied.

The Court finds that the proposed amendment would not cure the deficiency of the complaint. The regulatory scheme gives the Commission, not the Bureau, the authority to cancel a Third Party Provider's registration. *See* Cal. Code Reg. § 12205. Any injury that Plaintiff could suffer would be caused by the actions of a third party, not by Defendants

themselves. Further, in the absence of any steps taken by the Bureau to recommend cancellation of Plaintiff's registration, Plaintiff cannot at this time allege an injury that is anything but speculative.

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff lacks standing to bring the present claim. Defendants' motion to dismiss is hereby GRANTED. Given that amendment cannot cure the deficiency of the complaint, dismissal is with prejudice. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:   12/06/16                      _____

THELTON E. HENDERSON

United States District Judge